# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE STONE AND
MARBLE MASONS OF METROPOLITAN
WASHINGTON D.C., HEALTH
AND WELFARE TRUST FUND, et al.

Plaintiffs,

v.    Civil Case No. WDQ-13-1286

CAPITAL BUILDING CORPORATION

Defendant

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses the Motion for Entry of Default Judgment (ECF No. 8, as supplemented by ECF No. 13) filed by Plaintiffs, Trustees of the Stone and Marble Masons of Metropolitan Washington, D.C., Health and Welfare Trust Fund, Pension Trust Fund, and Apprenticeship Fund (collectively "Plaintiffs") against the Defendant, Capital Building Corporation ("Capital Building"). Capital Building has not filed an opposition, and its deadline has now passed. Judge Quarles referred this case to me to review Plaintiffs' Motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (ECF No. 9). I have reviewed Plaintiffs' Motion and accompanying exhibits. (ECF No. 8, 13). No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2011). For the reasons discussed below, I respectfully recommend that Plaintiffs' Motion (ECF No. 8, as supplemented by ECF No. 13) be GRANTED and that damages be awarded as set forth herein.

I. **BACKGROUND**

The Plaintiffs in this action are Trustees of the Stone and Marble Masons of Metropolitan Washington, D.C. Pension, Health and Welfare, and Apprenticeship Funds. Compl. ¶ 1. Capital Building, a Virginia corporation, entered into a Collective Bargaining Agreement ("CBA") with Bricklayers and Allied Craftworkers Local No. 1, a union representing stone and marble masons employed in the metropolitan area of Washington, D.C. The CBA requires Capital Building to make monthly contribution payments to the Pension, Health and Welfare, Apprenticeship, and several other Funds at a set rate, per hour, per union employee. *See* Pls.' Mot. Ex. 1, at 7. Contribution payments are due no later than the 25th day of the month following the month in which wages are paid. *Id.* The CBA further provides that Capital Building's failure to make timely payments will result in an assessment of liquidated damages, interest, and attorneys' fees. *Id.*

The CBA also binds Capital Building to the terms and conditions of several Agreements and Declarations of Trust ("Trust Agreements"), which establish the Pension, Health and Welfare, and Apprenticeship Funds. *See* Compl. ¶¶ 10-11; Pls.' Mot. Ex. 1, at 6. The Trust Agreements govern employer contributions to the Funds, and provide that, "[e]ach Employer shall contribute to the Fund the amount required by or specified in the Collective Bargaining Agreement..." Pls.' Mot. Exs. 2-4. In addition to contribution payments, the Trust Agreements require employers to submit monthly contribution reports, "which shall specify for each Employee, his name, social security number, hours for which contributions are due and such other pertinent information as may be required by the Trustees." *Id.* An employer is considered "delinquent" under the Trust Agreements when the employer fails to submit contribution payments and reports on the date specified in the CBA, or within twenty-five days of the end of

the month in which the contribution obligation was incurred. *Id.* A delinquent employer is liable "as liquidated damages and not as a penalty, for twenty percent (20%) of the amount of the delinquent contribution..." *Id.* The Trust Agreements also provide that a delinquent employer is liable for interest on unpaid contributions in the amount of one percent per month, calculated from the date when the employer was designated delinquent, to the date when the outstanding obligations are actually paid to the Funds. *Id.*

On April 30, 2013, Plaintiffs filed suit against Capital Building, alleging that from March, 2012 through April, 2013, Capital Building failed to make full and timely employee benefit contributions to the Funds, and failed to timely submit contribution reports, in violation of the CBA and Trust Agreements. Compl. ¶¶ 6, 12; Pls.' Mot. 1-2. Capital Building subsequently submitted the outstanding contribution reports and made partial, late contribution payments, which were credited to the balance owed. Pls.' Mot. 2. Plaintiffs now seek the remaining balance of delinquent contributions for each fund and pass-through entity, and liquidated damages plus interest for the Health and Welfare and Pension Funds only. *Id.* at 2-4. Plaintiffs also seek attorneys' fees and costs in the amount of $9,302.25. *See* Pls.' Supp. Mot. 6, ECF No. 13. Plaintiffs demand judgment in the amount of $90,029.71, which includes $69,687.62 for unpaid contributions, $14,308.74 for liquidated damages, and $6,033.35 for interest. *Id.* at 5-7. Plaintiffs also seek equitable relief in the form of a full accounting from Capital Building of all amounts due to Plaintiffs, and an injunction barring Capital Building from failing to make contribution payments, and from failing to submit contribution reports. *Id.* at 7-8.

## II. STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiffs' Motion for Entry of Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g.*, *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g.*, *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2

(W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, (1) the court must determine whether the unchallenged facts in Plaintiffs' Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

## III. DISCUSSION

### A. Defendant's Liability

Plaintiffs have brought this suit pursuant to § 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. § 185. § 301 of the LMRA provides in relevant part that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a). "Employee benefit trust funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a collective bargaining agreement." *Int'l Painters & Allied Trade Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 680, 686 (D. Md. 2013). As Fund Trustees, Plaintiffs have standing to sue. Plaintiffs have also stated a cause of action under § 301 by alleging that Capital Building has failed to make full and timely contribution payments in violation of the CBA and Trust Agreements.

Plaintiffs also bring suit pursuant to §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act, 29 U.S.C. §§ 1132(g), 1145. Sections 502 and 515 of ERISA govern the enforcement of employer contributions to employee pension and welfare trust funds. *See* 29 U.S.C. §§ 1132(g), 1145; *Trs. of Glaziers Local 963 Pension, Welfare, and Apprentice Funds v. Walker & Laberge Co., Inc.*, 619 F. Supp. 1402, 1403 (D. Md. 1985). Section 515 requires employers who are obligated to make contribution payments to a multiemployer plan or collectively bargained agreement to "make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Where the plan prevails in an action to enforce § 1145, § 502(g) requires courts to award the plan unpaid contributions, interest on the unpaid contributions, liquidated damages, attorney's fees, and other legal or equitable relief as the court deems appropriate. *See* 29 U.S.C. § 1132(g)(2). Taking the well pled factual allegations in the Complaint as true, Plaintiffs have established that Capital Building was a party to the CBA and is in breach of the CBA and Trust Agreements by virtue of Capital Building's failure to comply with the terms and conditions governing employer contributions to the Funds. Accordingly, Plaintiffs have asserted a valid cause of action pursuant to § 515 of ERISA, and are entitled to damages pursuant to § 502(g). On that basis, I recommend that Plaintiffs' Motion for Entry of Default Judgment be granted.

**B. Damages**

Under § 502(g)(2) of ERISA, an employer who fails to make contributions required by § 515 is liable to the multiemployer fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of up to twenty percent of the amount of the unpaid contributions, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). Having

established that Capital Building is liable to Plaintiffs, the Court must make an independent determination concerning damages. In support of their request for damages, Plaintiffs have submitted the supplemental affidavit of Nichelle Grey, an account executive with the third party administrator of the Pension and Health and Welfare Funds. *See* Pls.' Supp. Mot. Ex. C. Plaintiffs have tabulated the damages owed in the following amounts:

| Fund | Contributions | Liquidated Damages | Interest | TOTAL |
|---|---|---|---|---|
| Welfare | $30,963.10 | $8,512.84 | $3,535.53 | $43,011.47 |
| Pension | $24,576 | $5,795.90 | $2,497.82 | $32,869.72 |
| Training | $623.85 | | | $623.85 |
| Dues | $4,840.38 | | | $4,840.38 |
| CPP | $110.73 | | | $110.73 |
| Local PAC | $361.10 | | | $361.10 |
| Compliance | $180.55 | | | $180.55 |
| INT PEN | $4,610.00 | | | $4,610.00 |
| PPA | $701.29 | | | $701.29 |
| INT Dues | $1,361.24 | | | $1,361.24 |
| IMI | $1,329.85 | | | $1,329.85 |
| BAC-PAC | $29.53 | | | $29.53 |
| **Total** | **$69,687.62** | **$14,308.74** | **$6,033.35** | **$90,029.71** |

Pls.' Supp. Mot., ECF No. 13.

### 1. Unpaid Contributions

Plaintiffs assert that Capital Building owes a total of $69,687.62 in outstanding contributions from May, 2012 to April, 2013. *See id*. This figure includes delinquent contributions owed to several funds, as well as unpaid local and international dues. The Affidavit of Nichelle Grey states that "at various times after the due dates, Capital made partial payments of some contributions and those payments were credited to Capital's account in accordance with the regular policies and procedures of the Funds." Grey Aff. 3. In support of

7

Ms. Grey's testimony, Plaintiffs attached several tables reflecting Capital Building's unpaid contributions, liquidated damages, and interest from March, 2012 to April, 2013, for each fund and pass-through entity, less partial payments. *See* Pls.' Supp. Mot., Exs. C-1-C4.

### i. Health and Welfare Fund

Plaintiffs have attached a breakdown of the amounts due to the Health and Welfare Fund for the months of March, 2012 through April, 2013. *See* Pls.' Supp. Mot. Ex. C-2. The breakdown demonstrates that from March, 2012 through May, 2012, Capital Building made full contribution payments. *Id.* From June, 2012 through October, 2012, Capital Building made full, late contribution payments, and Plaintiffs assessed liquidated damages and interest on the contribution amounts. *Id.* Capital Building failed to make any contribution payments from November, 2012, through April, 2013, and Plaintiffs assessed liquidated damages and interest for the amounts owed. *Id.* The total amount owed in unpaid contributions by Capital Building to the Health and Welfare Fund is $30,963.10. I recommend that the Court award that amount in full.

### ii. Pension Fund

A table attached to the Plaintiffs' supplemental motion, *see* Pls.' Supp. Mot. Ex. C-3, demonstrates that between March, 2012 and April, 2013, Capital Building made occasional timely and untimely payments to the Pension Fund. In March, 2012, June 2012, and from November, 2012 through April, 2013, Capital Building failed to make any contribution payments. *Id.* As a result, Plaintiffs assert that Capital Building owes $24,576.00 in unpaid contributions. Accordingly, I recommend an award of that amount, as requested by Plaintiffs.

### iii. Pass-Through Entities

Plaintiffs have attached a summary of all amounts paid and owing the individual pass-through entities during the period of March, 2012 through April, 2013, including the Joint Apprenticeship and Training Fund, Union Dues, CPP, Local PAC Compliance, BAC International Pensions, PPA, BAC International Dues, IMI, and BAC-PAC. *See* Pls.' Supp. Mot. Ex. C-4. The summary shows that Capital Building owes a total of $14,148.52 in unpaid contributions. *Id.* I have reviewed the table reflecting the contribution amounts owed, and recommend an award of $14,148.52.

### 2. Interest

Plaintiffs are seeking $3,535.53 and $2,497.82 in interest for the Health and Welfare and Pension Funds, respectively. Interest on unpaid or untimely contributions was assessed at an annual rate of twelve percent. *See* Grey Supp. Aff. 5-6. I have reviewed the supplemental tables for the Health and Welfare and Pension Funds, which break down the contribution payments made, and owing, and which indicate when the Plaintiffs received contribution reports and payments. *See* Pls.' Supp. Mot. Exs. C-1-C-3. The total interest in the amount of $6,033.35 appears to have been appropriately calculated, and I recommend that it be awarded as requested.

### 3. Liquidated Damages

Plaintiffs are also seeking $8,512.84 and $5,795.90 in liquidated damages for unpaid contributions to the Health and Welfare and Pension Funds, respectively. In addition to unpaid contributions and interest, ERISA permits a plan to recover an amount equal to the greater of, (1) interest on the unpaid contributions, or (2) liquidated damages provided for under the plan, not to exceed twenty percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(i)-(ii). In her supplemental affidavit, Ms. Grey states that liquidated damages were assessed at twenty percent

of the unpaid or late paid contributions for the Welfare and Pension Funds only. *See* Grey Supp. Aff. 5; *see also* Pls.' Mot. Ex. 1. As noted above, the supplemental tables are comprehensive in their accounting of the amounts paid, and owed to each fund. The total liquidated damages amount of $14,308.74 appears to have been appropriately calculated, and I recommend that it be awarded as requested.

### 4. Other Relief

#### i. Attorneys' Fees and Costs

Plaintiffs claim a total of $9,302.25 in attorneys' fees and costs. Specifically, the Plaintiffs request $8,866.00 in fees, reflecting a total of 40.3 hours of billed time. *See* Fuller Supp. Aff. 4. The Plaintiffs also request a total of $436.25 in costs for the filing fee ($350.00), the private process server fee ($75.00), and postage ($11.25). *Id.* Those are reasonable charges for out-of-pocket expenses incurred by attorneys in the representation of their clients, and I recommend that they be awarded.

In calculating the appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted). A trial court may exercise its discretion in determining the lodestar amount because it possesses "'superior understanding of the litigation,'" and the matter is "'essentially'" factual. *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)). Once the lodestar amount

has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, this Court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at *6 (footnotes omitted). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at *6 n.19 (*citing Johnson*, 488 F.2d at 717-19).

Plaintiffs' attorneys in this case billed an equal hourly rate of $220 for each of four different attorneys who worked on the matter. Because the attorneys had varying years of practice, the hourly rates charged for each attorney do not entirely comport with the "Guidelines for hourly rates" set forth in Appendix B of the Local Rules of this Court. However, these Guidelines are not definitive; they are "solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees." Loc. R. App'x B n.6 (D. Md. 2011). Despite the divergence from the Guidelines in one instance, the $220.00 hourly rate is significantly less than what the Guidelines would allow for two of the attorneys who worked on the matter.[1] Therefore, I find that the hourly rate assessed is reasonable.

---

[1] William P. Dale and Charles Fuller both billed time for their work on this matter, and each has been admitted to the bar for more than fifteen years. Fuller Supp. Aff. 1-2. Under the Guidelines, an hourly

However, I do not find the total number of hours expended reasonable. The billing records demonstrate that the attorneys who worked on this case occasionally billed for ministerial tasks. For example, Eric Wexler billed 2.50 hours for the drafting and filing of a corporate interest disclosure form, and for his receipt and review of the affidavit of service. *See* Fuller Supp. Aff. Ex. D-1, at 8. Similarly, Mr. Wexler billed 2.20 hours for the drafting and filing of the one-page motion for the clerk's entry of default, and 0.5 hours for receipt and review of the clerk's entry of default. *Id.* at 9-10. Also of concern are several non-descript billing entries, which note "receipt and review of emails" and "intra-office conference" with no further information. *See id.* at 11, 13, 14, 16. Finally, perhaps due to the number of attorneys involved in the case, the total amount sought, $9,302.25, appreciably exceeds the range of fees and costs awarded in similar default judgment cases in this district. *See, e.g.*, *Int'l Painters and Allied Trades Indus. Pension Fund v. H.C. Ackerman & Son, Inc.*, Civil No. JKB-11-2117, 2012 WL 251963 (D. Md. Jan. 24, 2012) (awarding $6,928.26 in fees and costs); *Int'l Painters and Allied Trades Indus. Pension Fund v. Libmak Co., LLC*, Civil No. ELH-12-1125, 2012 WL 5383313 (D. Md. Oct. 31, 2012) (awarding $6,485.06 in fees and costs); *Plumbers & Steamfitters Local Pension Fund v. RLS Heating, Air Conditioning & Refrigeration, LLC*, Civil No. WDQ-10-2716, 2010 WL 5391450 (D. Md. Dec. 22, 2010) (recommending an award of $5,845.75 in fees and costs.) For those reasons, I recommend a reduction of the total number of hours expended from 40.3 to 32, which results in a fee assessment of $7,040, plus $436.25 in costs.

### ii. Injunctive Relief

Plaintiffs seek certain injunctive relief allowed by the terms of the CBA. In particular, Plaintiffs request that the Court order an injunction prohibiting Capital Building from failing to

---

rate between $275-$400 for lawyers admitted to the bar for fifteen years or more is presumptively reasonable. *See* Loc. R. App'x B (D. Md. 2011).

timely submit contribution reports and payments. Plaintiffs also request this Court to order Capital Building to provide a full and complete accounting of all amounts due to Plaintiffs. *See* Pls.' Supp. Mot. 7-8. The CBA and Trust Agreements already require Capital Building to timely submit contribution reports and payments. *See* Pls.' Mot. Exs. 1-4. Therefore, injunctive relief requiring compliance with these terms is appropriate because Capital Building has already agreed to such contractual obligations. ERISA authorizes the Court to provide other equitable relief as it deems appropriate. *See* 29 U.S.C. 1132(g)(2)(E). Additional relief in the form of a complete accounting of all amounts due to Plaintiffs from Capital Building is appropriate. I recommend granting Plaintiffs' request for injunctive relief.

**Conclusion**

For the reasons set forth above, I recommend that:

1. The Court GRANT Plaintiffs' Motion for Entry of Default Judgment (ECF No. 8, as supplemented by ECF No. 13);

2. The Court award Plaintiffs $69,687.62 in unpaid contributions, $6,033.35 in interest, and $14,308.74 in liquidated damages for a total of $90,029.71. I also recommend an award of $7,040 in attorneys' fees and $436.25 in costs; and

I direct the Clerk to mail a copy of this Report and Recommendations to defendant Capital Building at the address listed on Plaintiffs' Complaint (ECF No. 1).

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: January 17, 2014 /s/
Stephanie A. Gallagher
United States Magistrate Judge